UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ROBERT BRIEDE and VANTAGE
POINT FITNESS, INC. d/b/a THE
XTREME EDGE,

    Plaintiffs,

    v.

24 HOUR FITNESS, USA, INC.,
a California corporation,

    Defendant.

Civil No. 10-649-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiffs Robert Briede and The Xtreme Edge filed suit against Briede's former employer for intentional interference with economic relations and retaliation. Defendant moves to compel arbitration on plaintiffs' Third Claim for Relief, and moves to dismiss plaintiffs' Second Claim for Relief based on Federal Rule of Civil Procedure 12(b)(6). Alternatively, defendant moves to compel plaintiffs to make a more definite statement. For the following reasons, defendant's Motion to Dismiss and Motion to Compel Arbitration [9] is granted in part and denied in part.

1 -- OPINION AND ORDER

**BACKGROUND**

Plaintiff Robert Briede worked for defendant from 1996 until he was terminated on June 25, 2009. Four months later, Briede sent a letter to defendant's Chief Executive Officer outlining his employment claims and notifying defendant that he would file suit unless he received a response. After receiving no response, Briede filed suit in the Multnomah County Circuit Court alleging employment discrimination and retaliation.

Defendant later advised Briede that he had agreed in his employee handbook to arbitrate any employment-related claims against defendant. Briede subsequently agreed to voluntarily dismiss his lawsuit and submit his claims to binding arbitration.

Following his termination, Briede created The Xtreme Edge (Xtreme) to open his own fitness center. Briede is Xtreme's president and major shareholder.

On January 15, 2010, defendant's landlord notified defendant that the lease at its Tanasbourne location would not be renewed beyond February 28, 2010. Defendant also learned that Briede planned to lease that location for Xtreme's competing gym. Plaintiffs allege that upon notice of Briede's plan to lease the Tanasbourne location, defendant began retaliating against Briede and interfering with his new business.

Plaintiffs allege that defendant threatened its employees to prevent them from working for plaintiffs, and fired several employees who accepted positions with Xtreme before their two-week notice period had expired. Plaintiffs further allege that defendant intentionally damaged the electrical wiring and data communication lines in its Tanasbourne location. Plaintiffs initiated this lawsuit because of this retaliatory conduct.

**DISCUSSION**

Defendant moves to compel arbitration and to dismiss plaintiffs' Third Claim for Relief for statutory retaliation pursuant to the parties' pre-existing arbitration agreement. Defendant also moves to dismiss plaintiffs' Second Claim for Relief alleging intentional interference with economic relations for failure to state a claim.

**1.     Motion to Compel Arbitration**

Defendant asserts that plaintiffs' statutory retaliation claim should be subject to arbitration because it is based on defendant's alleged retaliation against plaintiff for filing his initial employment discrimination lawsuit. Plaintiffs contend that the acts alleged in their Complaint fall outside the scope of the arbitration agreement.

The Federal Arbitration Act requires a court to enforce an arbitration agreement that is "valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (quoting 9 U.S.C. § 2 (2006)). The court must first determine whether a valid agreement to arbitrate exists, and then decide whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both responses are affirmative, then the court must enforce the arbitration agreement in accordance with its terms. *Id*. Ordinary state contract law principles govern the interpretation of any arbitration terms. *Ferguson*, 298 F.3d at 782.

Under Oregon law, arbitration clauses are presumed valid "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796, 803 (Or. Ct. App. 2010) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

(1960)). The court must determine whether the parties intended their arbitration agreement to include the present controversy by examining the text and context of the applicable provisions. *Id.* (citation omitted). If the text is unambiguous, then the court must give proper effect to the parties' intentions, and any ambiguities must be resolved in favor of arbitrability. *Id.*

In this case, Briede acknowledged his receipt of defendant's employee handbook on May 10, 2005. Loar Decl., Ex. A, at 1. In his acknowledgment, Briede signed his agreement "that if there is a dispute arising out of my employment as described in the 'Arbitration of Disputes' policy, I will submit it exclusively to binding and final arbitration according to its terms." *Id.* The arbitration policy applies to "any employment-related dispute between a Team Member and 24 Hour Fitness," and specifically includes harassment and other claims arising under Title VII of the Civil Rights Act of 1964 (Title VII) or the related state statute. Loar Decl., Ex. B, at 1. Therefore, this court must determine whether plaintiffs' statutory retaliation claim arose out of his employment or is otherwise employment-related.[1]

Plaintiffs bring their retaliation claim against defendant under Oregon's Equality Act, which provides remedies for employment discrimination. *See* O.R.S. § 659A.003. According to O.R.S. § 659A.030(f)—the section on which plaintiffs' Third Claim for Relief is based—"it is an unlawful employment practice . . . [f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or

---

[1] Although plaintiffs assert that their claims should not be subject to the arbitration agreement because Briede is no longer a "Team Member," this argument is rejected. After reading the term "Team Member" in context with the rest of the handbook, this court finds that "Team Member" broadly refers to all of defendant's employees. Although Briede was terminated and is no longer defendant's employee, his termination does not affect the applicability of the parties' arbitration agreement. *See Livingston*, 227 P.3d at 804 (holding that employer's right to enforce arbitration agreement does not automatically terminate with the plaintiff's employment status).

because that other person has filed a complaint, testified or assisted in any proceeding under this chapter[.]" O.R.S. § 659A.030(f).

This statute plainly applies to unlawful employment practices. The use of "any person" in the text of this provision does not change the employment-related nature of the claim. The administrative rule interpreting O.R.S. § 659A.030(1)(f) specifically applies this statute to conduct by an employer that subjects "the employee to any adverse treatment, in or out of the workplace, that is reasonably likely to deter protected activity, regardless of whether it materially affects the terms, conditions, or privileges of employment." Or. Admin. R. 839-005-0033. The statute broadly protects employees from any retaliation by their employer, even if it occurs outside of the workplace.

Moreover, O.R.S. § 659A.030 was patterned after Title VII, which prohibits employment-related discrimination. *A.L.P. Inc. v. Bureau of Labor & Indus.*, 984 P.2d 883, 885 (Or. Ct. App. 1999) (noting that federal law applying Title VII is instructive when interpreting O.R.S. § 659A.030). Under Title VII, former employees can bring post-employment retaliation claims against their former employer if the action is related to or arises out of the employment relationship. *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 345 (1997) (holding that post-employment retaliation against a former employee for filing an equal employment complaint is actionable under Title VII). Similarly, post-employment conduct can be subject to an employment-based arbitration agreement when the plaintiff's claims relate to conduct that occurred during the plaintiff's employment or any consequences resulting from that conduct. *Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1451 (9th Cir. 1986) (holding that the plaintiff's defamation claim arose out of his employment

because the allegedly defamatory statements related to the plaintiff's mishandling of accounts while he was employed and his possible liability for those actions).

Here, plaintiffs' post-employment retaliation claim is subject to arbitration. Plaintiffs allege that defendant retaliated against Briede because of his initial lawsuit regarding defendant's conduct prior to Briede's termination. Compl. at 10-11. Briede's original lawsuit alleged discrimination and retaliation based on defendant's failure to accommodate Briede's disability and defendant's decision to demote and later terminate Briede. Barran Decl., Ex. A, at 2-10. Resolving all doubts in favor of arbitrability, plaintiffs' present retaliation claim is related to defendant's conduct surrounding Briede's termination, as well as its post-employment conduct upon learning about Briede's discrimination suit.

Additionally, Oregon courts have interpreted the phrase "arising out of employment" for worker's compensation purposes to require a causal connection between the employee's alleged injury and his or her employment. *Panpat v. Owens-Brockway Glass Container, Inc.*, 49 P.3d 773, 776-77 (Or. 2002). Under such reasoning, plaintiffs' claim should be compelled to arbitration because a causal connection exists between the retaliation alleged and Briede's employment. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("To require arbitration, [the plaintiff's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.") (citation omitted). Accordingly, plaintiff's Third Claim for Relief is compelled to arbitration.

### A. Unconscionability

Plaintiffs argue that the arbitration clause should not be enforced because it is both procedurally and substantively unconscionable. This court rejects both arguments.

Procedural unconscionability focuses on oppression and surprise during the formation of the contract. *Vasquez-Lopez v. Beneficial Or., Inc.*, 152 P.3d 940, 948 (Or. Ct. App. 2007). Oppression arises from an inequality of bargaining power, which results in no real negotiation or choice, and surprise exists when the supposedly agreed-upon terms are hidden within a complex form by the party seeking to enforce the terms. *Id.* Classic adhesion contracts, where the weaker party is offered the terms on a take-it-or-leave-it basis, are deemed procedurally unfair. *Sprague v. Quality Rests. Nw., Inc.*, 162 P.3d 331, 334 (Or. Ct. App. 2007). However, if no other evidence of oppressive circumstances exists, and the arbitration terms are clearly and fully described, then unequal bargaining power between an employer and an employee will not render an arbitration agreement unenforceable. *Id.*

Substantive unconscionability arises from a substantial disparity in bargaining power, combined with terms that unreasonably favor the powerful party. *Livingston*, 227 P.3d at 806. But Oregon courts are "reluctant to declare contractual provisions per se unconscionable, even among parties of unequal bargaining power." *Id.* (quoting *Motsinger v. Lithia-Rose-FT, Inc.*, 156 P.3d 156, 164-65 (Or. Ct. App. 2007)).

Plaintiffs argue that the arbitration agreement is both an adhesion contract and illusory because Briede was required to accept the terms before his employment, and defendant reserved the right to modify its terms at will. Plaintiffs rely on *Arredondo v. 24 Hour Fitness USA Inc.*, No. 07-00232 DAE BMK, 2007 WL 2363386, at *3 (D. Haw. Aug. 13, 2007), which held the employer's arbitration agreement illusory. However, other courts have held similar agreements to be enforceable despite the employer's alleged unilateral power to change the terms at will. *See Edwards v. 24 Hour Fitness*, No. C09-1016RSL, 2009 WL 3413641, at *1 (W.D. Wash. Oct. 22, 2009) (holding the agreement valid and enforceable because it was "written in clear, easily

7 -- OPINION AND ORDER

understandable language"); *Browning v. 24 Hour Fitness, Inc.*, No. C05-5732RBL, 2006 WL 151933, at *2 (W.D. Wash. Jan. 19, 2006) (holding the agreement enforceable because any changes must be made with notice).

Employees cannot knowingly agree to arbitrate their claims simply by signing an acknowledgment that they received their employee handbook and agreed to read its terms. *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997). If the acknowledgment fails to mention any arbitration clause, the employee's agreement cannot be implied by his or her signature and continued employment. *Id.* However, if the acknowledgment specifically directs the employee's attention to the arbitration clause in the handbook, then the arbitration agreement can be given effect. *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155-56 (9th Cir. 1998) (citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997)).

Here, the acknowledgment specifically referred to the arbitration clause and notified Briede that any dispute arising out of his employment must be submitted to arbitration. Loar Decl., Ex. A, at 1. Additionally, the arbitration terms were set out on two separate pages in the handbook in clear, easily understandable language. *See* Loar Decl., Ex. B, at 1. Nothing in the arbitration agreement shows oppressive or surprising terms. Guided by Oregon's policy of applying a broad and favorable construction to arbitration agreements, I find this agreement enforceable and not unconscionable.

**B. Waiver**

Plaintiffs also assert that defendant has waived its right to compel arbitration because too much time has passed since defendant was notified of this claim.

The court must be mindful of the strong policy favoring enforcement of arbitration agreements when determining whether a party has waived its right to compel arbitration. *Fisher*

8 -- OPINION AND ORDER

*v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). The party seeking to prove waiver must demonstrate that (1) the other party knew of its right to compel arbitration; (2) the other party acted inconsistently with that right; and (3) the party seeking to avoid arbitration would be prejudiced by arbitration. *Id.*

In this case, defendant filed its motion to compel less than two months after plaintiffs commenced their suit. This is within the acceptable time limits set out by the Ninth Circuit. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1125-26 (9th Cir. 2008) (holding no prejudice existed where defendant filed motion to compel arbitration within thirty days after the complaint was filed); *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, 64 Fed. App'x 70, 72 (9th Cir. 2003) (finding no prejudice when a motion to compel was filed seventy-two days after the complaint was filed); *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding prejudice to the plaintiff when the defendant filed its motion to compel more than two years after the complaint was filed).

Additionally, "the issue of waiver of arbitrability involves a condition precedent to be decided by the arbitrator, rather than the court." *Livingston* 227 P.3d at 802-03. Accordingly, plaintiffs' waiver argument before this court is rejected.

**2.      Motion to Dismiss Plaintiffs' Intentional Interference Claim**

Defendant asserts that plaintiffs failed to plead the facts necessary to show any business relationship or contract between Briede and his landlord or fitness instructors, and failed to allege any interference by defendant. This court finds that plaintiffs have pled sufficient facts to survive dismissal.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is plausible on its face.

9 -- OPINION AND ORDER

*Ashcroft v. Iqbal*, 556 U.S. _, 129 S. Ct. 1937, 1949 (2009). When considering a motion to dismiss, the court must determine whether the plaintiff has made factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). The reviewing court must treat all facts alleged in the complaint as true and resolve all doubts in favor of the nonmoving party. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Experimental Eng'g, Inc. v. United Tech. Corp.*, 614 F.2d 1244, 1245 (9th Cir. 1980).

To properly state a claim for intentional interference with economic relations under Oregon law, the plaintiff must allege six elements: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) through improper means or for an improper purpose; (5) causation; and (6) damages. *McGanty v. Staudenraus*, 901 P.2d 841, 843 (Or. 1995). The purpose of the tort is to protect the integrity of voluntary economic relations that would have likely resulted in a pecuniary benefit to the plaintiff but for the defendant's interference. *Fox v. Country Mut. Ins. Co.*, 7 P.3d 677, 690 (Or. Ct. App. 2000).

A plaintiff need not allege that the defendant interfered with a specific business relationship with a third party if the plaintiff alleges that the defendant's interference prevented it from resuming its business and serving its former or prospective customers. *Employers' Fire Ins. Co. v. Love It Ice Cream Co.*, 670 P.2d 160, 165 (Or. Ct. App. 1983). Intentional interference can also be pled through the plaintiff's allegation that the defendant induced a third party not to enter into or continue a business relationship with the plaintiff. *Thompson v. Tel. & Data Sys., Inc.*,

881 P.2d 819, 826 n.1 (Or. Ct. App 1994). However, a mere business expectation is not enough to support a claim for intentional interference. *Or. Life & Health Ins. Guar. Ass'n v. Inter-Regional Fin. Grp., Inc.*, 967 P.2d 880, 887 (Or. Ct. App. 1998).

Taking the facts alleged in plaintiffs' Complaint as true, plaintiffs have stated a claim for intentional interference. Plaintiffs hired defendant's former manager, Stacy Ludlow, to work for Xtreme. Compl. at 3-4. Defendant then threatened Ludlow that if she worked for Xtreme, she would never be rehired by defendant and defendant would "drag her name through the mud." Compl. at 4. Defendant terminated four employees prior to the end of their two week period in retaliation for accepting employment with plaintiffs. *Id.* Defendant changed its usual policy of rehiring former employees who accepted work with competitors, and instead refused to rehire any employee who worked for plaintiffs. *Id.* Defendant's corporate representative also allegedly cut the wiring in its Tanasbourne location before the lease was transferred to plaintiffs. Compl. at 5-6.

Plaintiffs now support their assertions with three documents that they inadvertently failed to attach to their Complaint: (1) a letter from Eric Martin; (2) an e-mail from Phil Vasconcellos at Pacific IT Services, LLC; and (3) an e-mail from Dan Slick at DS Marketing & Sales. The court may consider documents attached to the complaint when reviewing a motion to dismiss. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Martin stated that he witnessed defendant's management and employees "maliciously cutting all of the data communication lines" and overheard that the managers' intent was to "sabotage Bob Briede, new tenant-- from being able to open up on time." Altschul Decl., Ex. A, at 1. The IT technician reported to Briede that all data, video, and phone wiring was "vandalized in a way that makes it unusable," and was likely "done deliberately by the prior tenants to make it

11 -- OPINION AND ORDER

difficult for [Briede] to move in." Altschul Decl., Ex. A, at 2. As a result of the damaged wiring, plaintiffs had to pay repair costs and suffered a five-day delay in Xtreme's opening. Compl. at 7. These allegations properly state a claim for intentional interference.

Finally, defendant argues that Briede and Xtreme cannot both maintain actions against defendant for the same alleged interference. To state a personal claim, a shareholder must claim damages that are distinct from, rather than derivative of, the corporation's harm. *Caplener v. U.S. Nat'l Bank of Or.*, 857 P.2d 830, 836 (Or. 1993); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (applying similar California principle that solely economic injury to a shareholder cannot support a personal cause of action for intentional interference).

After reviewing the Complaint in a light most favorable to plaintiffs, I find that Briede alleges damages distinct from his financial interest in Xtreme. Briede, in his individual capacity, alleges interference with his right to secure employment along with emotional distress, degradation, embarrassment, and humiliation. Compl. at 10. These allegations are sufficient to survive defendant's motion for dismissal.

## **CONCLUSION**

For the reasons provided, defendant's Motion to Dismiss and Motion to Compel Arbitration [9] is granted in part and denied in part. Plaintiffs' Third Claim for Relief is dismissed and must be resolved in arbitration.

IT IS SO ORDERED.

DATED this __21__ day of October, 2010.

                                               __/s/ Ancer L. Haggerty__
                                                 Ancer L. Haggerty
                                           United States District Judge